HANNESS v. SMITH.

1. A creditor applying to the court to come in under an attachment, is not bound to file his claim when he applies. And if he does file a claim, he is not thereby restricted from proving beyond the amount specified.

2. If, in attachment, the plaintiff, or any applying creditor of the defendant, obtains judgment for any amount in the Supreme Court, although below $200, or below $50, he recovers full costs.

3. The necessary expenses incurred by a Sheriff in taking care of and preserving property attached, are to be assessed and paid to him above the ordinary caption fees. The general rule is, that an officer who, necessarily in the execution of his office, disburses moneys, must be re-imbursed.

4. These expenses may be assessed and recovered in a judgment obtained by any creditor, as well as in that by the plaintiff in attachment.

This case came up on a motion to set aside a judgment as to costs, on this state of facts.

A writ of attachment was issued out of this court against Charles Smith, as an absconding debtor, at the suit of one Hogan, James Hanness came in as a creditor. Afterwards the defendant entered into bond, pursuant to the statute, and appeared to the suits of the plaintiff in attachment, and also of Hanness, and some of the other creditors, and as to them the attachment was dissolved.

The defendant filed a plea in Hanness' suit, but afterwards relinquished the same, and at the Term of April last Hanness took judgment for debt and costs; the former being assessed by the court at thirty-seven dollars and fifty-nine cents. The court at the same time, on application in behalf of the Sheriff who served the writ, directed the clerk to tax as part of the costs in this suit, the costs *and reasonable charges and expenses* of the Sheriff, over and above his legal fees for serving the writ.

The clerk accordingly taxed the whole costs at four hundred and fifty dollars and seventy-three cents, of which sum four hundred and eight dollars and twenty-six cents were allowed the Sheriff for his costs and charges, arising principally from the expense of keeping forty-nine horses, that were seized by the writ, for twenty-six days, and until they were directed to be sold by the court.

Argued before RANDOLPH and WHITEHEAD, JJ.

*J. S. Scofield,* for the motion, and *Wilson* and *Vroom,* contra.

RANDOLPH, J. delivered the opinion of the court.

The application in this case is to set aside the judgment as to the costs, either wholly or in part.

1. The first objection is, that the claim filed was only twenty-five dollars, whilst the judgment is for thirty-seven dollars and fifty-nine cents. There is nothing in the statute which limits the judgment to the amount of the claim filed, nor indeed does it require the creditor to specify or even file the amount of his claim, as is required by the Act for settling up insolvent estates, in the Orphans' Court. By the 25th section of the Attachment Act, *R. S.* 53, the auditors are directed to audit and adjust the *demands* of the plaintiff and applying creditors, and to ascertain the sums due them respectively. There is, therefore, nothing in this objection.

2. The next objection is, that the plaintiff was allowed full costs, though the suit was in the Supreme Court, and the judgment for less than two hundred dollars of debt; and indeed for less than fifty dollars, the amount of the justice's jurisdiction in cases of attachment. It would be a good and sufficient answer to this objection, to say that the act respecting costs, of Nov. 6, 1797, *Rev. Laws* 309, and the section in the Attachment Act, respecting the amount of the justice's jurisdiction, have no application to the present case, and was so determined by this court in the case of *Reed* v. *Chegary, Spencer* 616. It is not a suit brought in this court by Hanness, but he is involuntarily brought here to meet the attachment, and the defendant has appeared to that claim, and as to it had the attachment dissolved and has thus compelled the plaintiff to take his judgment in the usual way for debt and costs. But the result would be precisely the same, if Hanness was the plaintiff in attachment, and recovered under fifty dollars. The act limiting costs in this court, to cases of a recovery for $200, which would seem to apply only to common law suits, was passed Nov. 6, 1797, but the original Attachment Act was passed March 8, 1798, and by the latter statute it is directed that, if *any creditor* shall make oath or affirmation that his debtor absconds—or that he owes to the plaintiff a certain sum, and resides out of the state, (sections

1 & 26, *R. S.*, 355 & 361), he is entitled to have a writ of attachment, issued out of either the Supreme Court or Court of Common Pleas. The term any creditor, of course includes all creditors, large or small; and the section of the Attachment Act, which gives jurisdiction to the justice, has in it nothing about costs, but simply makes it optional with the creditor to apply to a "justice of the peace, and sufficient inducement is given to the small creditors to make choice of that tribunal, by requiring the justice to give judgment for the amount proved, and to issue execution therefor; whereas an attachment out of the higher courts is general, and the distribution of the debtor's property is *pro rata* amongst the plaintiff and applying creditors, and supercedes all attachments issued by a justice. This might be reason sufficient why the legislature allowed costs to any creditor in attachment, notwithstanding the act of the preceding year limited the recovery of costs on suits in tne Supreme Court; but there is a still more potent reason why the legislature should thus have allowed costs—the debtor may have owed many debts, but no single one have amounted to fifty dollars, and yet if a small creditor could not have obtained a general attachment out of the higher courts, there would have been no power to supercede the scramble for precedence amongst the small creditors, and compel a *pro rata* distribution amongst all; the statute has, therefore, wisely authorized any creditor to obtain a general attachment out of the Supreme Court, and as a necessary consequence, allowed him costs, else although the general attachment was obtained for the benefit of all, the plaintiff must, to confer that benefit, pay costs and expenses, equal, or perhaps superior, to his debt. And this view is strengthened by the fact, that if the debtor has property in two or more counties, it can only be covered by a writ from the Supreme Court.

3. The principal ground urged for disturbing the judgment, is on account of the costs and charges allowed the Sheriff. By the 5th and 9th sections of the Attachment Act, (*R. S.* 49, 50,) the officer is required to execute the writ, and to retain the goods, chattels, and personal estate seized, until the same shall be disposed of by order of court, or the defendant shall give bond. It frequently happens that the property cannot be safely

kept, without considerable expense—thus horses and cattle must be provided for at an expense of somebody, but no part of this is covered by the ordinary caption fees. The general principle of law is, that where an officer is required to perform a duty involving disbursements of money out of pocket, he must be reimbursed, and the costs and charges mentioned in the 36th section of the act, will appropriately apply to the extra expenses of the officer—these costs and charges are required to be allowed by the creditors, but when the suit, as in the present case, is withdrawn from them, and transferred to the court, the power of allowing and adjusting the costs and charges, must go with the suit. Besides, the proceeding in attachment is *in rem.*, and like all such proceedings on writs of execution, or in the courts of admiralty, all extra expenses must come out of the property. Nor is it necessary for the officer to wait for the re-payment of these expenses until the plaintiff recovers judgment, for that may never occur; he may be nonsuited, or have a verdict and judgment against him, or the defendant may settle with him in order to get clear of the costs and expenses. Whatever may be the result of the plaintiff's suit, any creditor to whose demand the defendant has appeared, may proceed and obtain judgment, and these costs and charges may be assessed as part of the costs in that suit; or the court might probably direct the amount to be assessed, without regard to any suit, certainly if any part of the property remained with the auditors, the amount might be obtained through them. The costs, which by the 26th section are to abide the event of the suit, mean the ordinary taxable costs, and not the extra charges and expenses referred to in the 36th section.

There is no objection to these charges as unreasonable, and as the officer is entitled to recover them in the mode pursued, the present motion must fail in every aspect in which it has been made, and be overruled, with costs.

CITED in *D., L. & W. R. R. Co.* v. *Ditton,* 7 *Vr.* 361; *Jersey City* v. *Horton,* 9 *Vr.* 92.